## Geiselman v. Roaring Spring Blank Book Company et al.

*Peter P. Jurchat,* for plaintiff; *Samuel I. Spyker,* for defendants.

HARE, P. J., Dec. 19, 1927.—This case presents for solution a novel problem. Persistent investigation has not revealed any recorded decision precisely in point. The proven facts are that the claimant was an employee of the defendant. She sustained an accident on April 16, 1920, which caused an impairment of the use of her left hand. The parties deemed the disability to be total and a compensation agreement was executed on that basis, in which it was provided that the claimant should receive compensation at the rate of $6 per week from and after April 26, 1920. Compensation was paid to June 13, 1920, the claimant having certified in her final receipt that disability terminated on that date. She then returned to her employment and continued therein, at the same wages she received before the injury, until Dec. 28, 1921, at which time she presented her petition for reinstatement of the compensation agreement. An order of reinstatement was entered and compensation directed to be paid from the date of the petition and to continue until disability ceased or changed in extent, but not to exceed a period of 175 weeks.

On May 4, 1922, the insurance carrier applied for a cancellation of the agreement, alleging termination of the disability. To this petition the claimant filed an answer, denying recovery from the injury sufficient to resume her employment and requesting a modification of the agreement, with credit for compensation already paid. This controversy was concluded by the parties in an agreement providing for the payment of compensation for partial disability at the rate of 99 cents per week for a period of 300 weeks, or until the partial disability terminated, if the termination thereof occurred prior to the expiration of that period. Compensation was paid in accordance with the terms of this agreement until Jan. 25, 1926. In condensed form, we have this classification of disability and schedule of payments:

Claimant was injured April 16, 1920.

From that date, compensation for total disability was paid to June 13, 1920, a period of eight weeks.

From the last date, no compensation was paid until Dec. 28, 1921, a period of eighty weeks.

From the last date, compensation for total disability was paid to May 3, 1922, a period of eighteen weeks.

From said date, compensation for partial disability was paid to Jan. 25, 1926, a period of 194 weeks.

The sum total of these periods is 300 weeks, and the compensation for partial disability during the period of 300 weeks, established by the Compensation Act, is computed by the appellant in the order and by the classifications just stated.

Upon the assumption that there had been full compliance with the terms of the agreement for partial compensation, payments were discontinued on Jan. 24, 1926, which date was 300 weeks subsequent to the injury. The claimant then presented her petition to the Compensation Board for a review of the agreement, which resulted in an order by the referee setting aside the supplemental agreement for compensation for partial disability, reinstating the original and modifying the terms thereof.

Upon appeal from the order of the referee, the Workmen's Compensation Board modified the order and directed compensation to be paid for partial disability at the rate of 99 cents a week, beginning May 3, 1922, payments to continue until the disability ceases or changes in extent, not to exceed, however, a period of 300 weeks from May 3rd, if partial disability continues that long, with proper deduction for payments for total and partial disability previously made.

All the jurisdictional facts either have been conceded or sufficiently proven. This appeal presents this narrow legal question: If partial disability immediately follows total disability, which total disability was preceded by a period of no disability, under section 306, paragraph *(b)*, of the Act of June 2, 1915, P. L. 736, as amended by the Act of June 26, 1919, P. L. 642, shall there be a credit of the number of weeks during the *interim* period of no disability on the period of 300 weeks, specified in the act, during which compensation shall be paid for partial disability?

Had the accident from which the disability resulted occurred prior to Jan. 1, 1920, the right of the claimant to compensation for partial disability would have been limited to the period of 300 weeks immediately following the fourteenth day of the total disability. Intervening periods of total disability, or periods during which the claimant was not at all disabled, would have been entirely immaterial. The right to compensation would have expired, in the language of the statute, at the expiration of "three hundred weeks after the fourteenth day of such disability:" Ludington *v.* Russell Coal Mining Co., 90 Pa. Superior Ct. 318.

The legislative intent and the appropriate application of the provisions of the statute have been so frequently stated by our appellate courts, and recently reiterated in the case of Bausch *v.* Fidler, 277 Pa. 573, that further discussion would not serve any useful purpose. The legislature, by the Act of June 26, 1919, P. L. 642, did not leave open to conjecture the intent to change the period of compensation for partial disability. It has expressed such intent in clear, definite and unequivocal language which is self-explanatory. It declared that "this compensation (for partial disability) shall be paid during the period of such partial disability; not, however, beyond three hundred weeks after the tenth day of such partial disability;" that is, from and after the tenth day following the beginning of partial disability. The date upon which total disability began is not of any significance.

Partial disability is compensable, under the statute, so long as it exists, not exceeding 300 weeks. No doubt, the draftsman of the act had in mind that there might be intervening periods when there would not be disability, for paragraph *(a)* provides for payment of compensation only during the first 500 weeks after the tenth day, unless such disability should cease prior to the expiration of that period. Paragraph *(b)*, covering disability of partial character, provides for compensation only during the period of 300 weeks immediately following the tenth day of such partial disability. These are periods of limitation as to maximum time and amount of compensation, fixed in accordance with the nature and character of the disability. They do not

describe or define the reductions allowable or credits to be made in the event that one class of disability is followed by another. The last sentence in each paragraph prescribes the precise method of determining the proper reduction for a preceding disability. The portion of paragraph *(b)* pertinent to this issue is, "should total disability be followed by partial disability, the period of three hundred weeks mentioned in this clause shall be reduced by the number of weeks during which compensation was paid for such total disability." The direction is not that the period prescribed for partial disability shall be reduced by the number of weeks intervening between the inception and cessation of such disability, but by the number of weeks during which compensation was actually paid. The claim for reduction must rest upon payment. The claimant has received compensation for total disability during twenty-six weeks, and for partial disability during 194 weeks, or an aggregate of 220 weeks. She is entitled to receive compensation for partial disability during the additional period of eighty weeks at 99 cents per week.

Now, Dec. 19, 1927, the exceptions to the findings of the Workmen's Compensation Board are overruled, the appeal dismissed at the cost of the appellant, and the award of the board is hereby confirmed and judgment is directed to be entered in favor of the claimant and against the defendant in the sum of $79.20. The prothonotary is hereby directed to certify this judgment to the Workmen's Compensation Board.

From Robert W. Smith, Hollidaysburg, Pa.