Ede *v.* Ruhe Motor Corporation et al., Appellants.

Argued October 4, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

Robert F. Blanck, with him Boyd H. Walker, Glenn A. Troutman, and McWilliams, Wagoner & Troutman, for appellants.

David B. Skillman, for appellee.

OPINION BY WRIGHT, J., November 12, 1957:

This is a workmen's compensation case. On May 28, 1954, Francis H. Ede, Jr. fell and fractured his right ankle while making a business call in the course of his employment as a car salesman for the Ruhe Motor Corporation. His weekly wage at the time of the accident was $75.71. An open agreement was executed calling for the payment of compensation for total disability. The employer filed a petition to terminate the agreement as of September 13, 1954.[1] The Referee dismissed the petition to terminate, and directed the employer to pay compensation for total disability to September 17, 1954, and for fifteen percent partial disability thereafter. Upon the employer's appeal, the Board modified the finding of partial disability to ten percent, and ordered payment on that basis. Upon the employer's ap-

---

[1] While this date was amended at the hearing to August 20, 1954, it is not now disputed that the correct date should be September 17, 1954.

peal to the court of common pleas, judgment was entered on the Board's award. This appeal by the employer to the Superior Court followed.

The testimony before the Referee established that on or about June 25, 1954, appellee and his father, a lawyer engaged in active practice in Northampton County, commenced a partnership business known as the Ede Motor Company. Appellee terminated his employment with the Ruhe Motor Corporation for the purpose of managing this new venture. Since July 2, 1954, appellee has received payments of $100.00 per week, $20.00 of which was withheld for income tax. The following appears in the testimony (italics supplied): "Q. Mr. Ede, you have been *earning* at least $100.00 a week since July second. A. That is correct".

Dr. Reno, an orthopedic specialist, testified on behalf of appellant that appellee still suffered from instability of the ankle joint secondary to a widening of the mortise, but that "for his occupation at that time he was able to continue his duties". This witness stated on cross-examination that appellee's disability "for general work" would be approximately fifteen percent. Dr. White, appellee's attending physician, testified on behalf of appellant that the date of his last treatment was September 17, 1954, and that appellee then had no permanent disability. On cross-examination, Dr. White stated that, "with reference to general disability", appellee still had "a slight widening of the ankle mortise", but that there was no disability so far as appellee's ordinary occupation was concerned. Appellee called no medical witnesses. Both appellee and his father testified that the $100.00 weekly payments were drawn against appellee's half of the anticipated profits. The father further testified that the business had operated at a loss; that appellee "could have been replaced at $35.00 a week"; and that "if I didn't let him have it

one way I would have to take it out of the other pocket and give it to him".

Appellant contends that, within the meaning of section 306(b) of the Workmen's Compensation Act,[2] appellee (1) has not suffered a loss of wages; and (2) has not suffered a loss of earning power. We are in agreement with both of these contentions, notwithstanding the fact that we do not question the finding of the Board that appellee has a ten percent partial disability. While the Board is the ultimate arbiter of the facts and its findings are binding on appeal if supported by competent evidence, the appellate court may review questions of law, including whether the law has been properly applied to the facts: *Kracoski v. Bernice White Ash Coal Co.*, 183 Pa. Superior Ct. 155, 130 A. 2d 190.

(1) There is a distinction between wages and earning power. Where there is disability and loss of earning power, but the employe receives as much in wages for his services as he did before the injury, an award may be made but the payment of compensation must be suspended: *Scipani v. Pressed Steel Car Co.*, 150 Pa. Superior Ct. 410, 28 A. 2d 502. And see the well considered opinion by Judge (now Mr. Justice) ARNOLD in *Holtz v. McGraw & Bindley*, 161 Pa. Superior Ct. 371, 54 A. 2d 905. Section 306(b) of the statute, as amended, refers to the actual amount of wages received, regardless of the rate of pay and the lack of opportunity for employment: *Liberatori v. Scott Smith Cadillac Co.*, 172 Pa. Superior Ct. 121, 92 A. 2d 557.

As conceded by his able counsel, the question whether the $100.00 weekly payments received by appellee constituted wages is one of law. On this question the Referee concluded that "the $100.00 a week drawing account which respondent [appellee] had against possi-

---

[2] Act of 1915, P. L. 736, section 306(b), as amended, 77 P.S. 512.

ble future profits of the partnership cannot be considered as earnings". This conclusion was not modified by the Board. The court below apparently assumed that $35.00 of the $100.00 represented wages, and that the balance was "either a gratuity· from the father or an advance payment of expectant profits". The compensation authorities, as did the lower court, took the position that the instant situation was controlled by our decision in *Clingan v. Fairchance Lumber Co.*, 166 Pa. Superior Ct. 331, 71 A. 2d 839. In that case, following a disabling accident, claimant purchased a grocery store which was operated by himself and the members of his family. The work performed by claimant was extremely limited, and consumed only about an hour a day. The testimony showed that the net profits amounted to approximately $150.00 a month during 1945, and $260.00 a month during 1946. These amounts represented the combined efforts of the claimant, his wife, and his four daughters. Discussing the claimant's services in contributing to the income of the business, Judge HIRT said: "The testimony in this case does not even tend to establish that the profits of the business are the result of claimant's management or his efforts and there is no other evidence of his ability to earn an income".

The case at bar presents an entirely different situation. Appellee took over the active management of the business of the partnership. The father contributed the capital, and appellee's contribution was his service and experience as the former employe of an automobile agency. He began work when the business opened, and the evidence shows that he has been on the job ever since, both during the day and in the evenings. The Board stated that he is "devoting his full time to this enterprise and performing substantially all the duties of his occupation". For this service he received $100.00

per week, subject to a deduction for withholding tax. We do not agree with the position of the Board that this weekly payment did not represent wages "inasmuch as the business operated at a loss". The legal conclusion made necessary by the testimony is that claimant received $100.00 per week as wages from his employment. Whether the business itself was profitable is immaterial.

(2) Our disposition of the first question, as heretofore indicated, would require only a suspension of the award. This would not be a permanent solution of the case, provided the payments to appellee should subsequently be reduced below $75.71 per week. We therefore prefer to rest our decision upon appellant's second contention, which will require only brief discussion. Since the decision of the compensation authorities was against the party having the burden of proof, here the appellant, the question before us is whether the findings of fact are consistent with each other and can be sustained without a capricious disregard of the evidence: *Hollenbach v. North Wales Foundry Co.*, 184 Pa. Superior Ct. 571, 136 A. 2d 148.

The Board's finding that appellee's ten percent partial disability resulted in a "corresponding loss of earning power" is obviously inconsistent with the statement in the Board's opinion that "the extent of claimant's disability does not materially affect his earning power either as an automobile salesman . . . or as general manager of an automobile sales agency". The proper test to be applied in determining whether the power to earn has been diminished is the claimant's ability to earn wages in any kind of employment for which he is fitted: *Garvin v. Philadelphia Transportation Co.*, 173 Pa. Superior Ct. 15, 94 A. 2d 72. The testimony of appellant's medical witnesses, heretofore detailed, was that appellee's disability did not diminish his ability

to earn wages in any kind of employment for which he is fitted. In the absence of any competent testimony to the contrary, the disregard by the compensation authorities of this evidence was clearly capricious and, even though not disturbed by the court below, cannot be here sustained. The award must be limited to compensation for total disability to September 17, 1954, and the agreement terminated as of that date.

The judgment of the court below is vacated, and the record is remanded for the entry of judgment in accordance with this opinion.