Benedict *v.* Fox et al., Appellants.

Argued March 23, 1960.   Before RHODES, P. J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONTGOMERY, JJ.

*R. T. Mutzabaugh,* for appellants.

*Robert Lea Wolfe,* for appellee.

OPINION BY WATKINS, J., April 13, 1960:

This is a workmen's compensation case involving the proper application of the formula set forth in the Act of August 24, 1953, P. L. 1382, §306(b), 77 PS §512, for the determination of partial disability payments, which reads as follows: "For disability partial in character (except the particular cases mentioned in clause (c)) sixty-six and two-thirds per centum of the difference between the wages of the injured employe, as defined in section three hundred and nine, and the earning power of the employe thereafter; but such compensation shall not be more than twenty-three dollars per week. This compensation shall be paid during the period of such partial disability, not, however, beyond three hundred and fifty weeks after the seventh day of disability. Should total disability be followed by partial disability, the period of three hundred and fifty weeks mentioned in this clause shall be reduced by the number of weeks during which compensation was paid for total disability. The term 'earning power', as used in this section, shall in no case be less than the weekly amount which the employe receives after the accident and shall in no case be less than five times his actual daily wage as fixed by the day, hour or by the output of the employe, and in no instance shall an employe receiving compensation under this section receive more in compensation and wages combined than a fellow employe in similar employment."

The claimant is a laborer who was injured in the course of his employment and was paid compensation by agreement for total disability. The proceedings important to this decision stem from a rehearing of a petition to terminate on the ground that disability had ceased. The referee found that the claimant was fifteen per cent partially disabled; that his wages at the time of the accident were $89.60 weekly, and that his earning power since his return to work was $50 weekly. The

referee first made the following conclusion of law: "The claimant, although still suffering from a 15 percent partial disability, has been, since January 1, 1957, steadily employed earning $50.00 per week and therefore is entitled to compensation only for the loss in earning power suffered by him since January 1, 1957, with the defendant and defendant's compensation insurance carrier to be given credit for any compensation paid in excess of $23.00 per week, the maximum compensation for partial disability in view of claimant's loss of earning power of $39.60 per week."

He later amended this conclusion to read as follows: "Claimant, although still suffering from a 15 percent partial disability, has been, since January 1, 1957, steadily employed earning $50.00 per week and therefore is entitled to compensation only for the loss in earning power suffered by him since January 1, 1957, in the amount of 66 2/3 per cent of 15 per cent of $39.60, being $3.96 per week loss of earning power since January 1, 1957, with the defendant and defendant's compensation insurance carrier to be given credit for any compensation paid in excess of $3.96 per week since January 1, 1957."

The Workmen's Compensation Board, on appeal, found that the referee had correctly resolved the matter by his first conclusion, which the board adopted by vacating and setting aside the latter conclusion. The Court of Common Pleas of Cameron County, on appeal, affirmed the decision of the board.

The issue is simple. The appellants contend that under the Act the amount of compensation to which the claimant is entitled for partial disability should be arrived at by the following formula, which the referee followed, to wit: 66 2/3 per cent of 15 per cent (the finding of partial disability) of $39.60 (the difference between the wages of the claimant before and the earn-

ing power of the claimant after the accident) or a compensation award of $3.96 weekly.

The claimant-appellee contends that the amount of compensation to which he is entitled under the Act for partial disability should be computed by the following formula, as adopted by the board and the court below, to wit: 66 2/3 per cent of $39.60 or $26.40, but limited by the Act to $23 weekly.

The facts found by the compensation authorities that the claimant suffered a fifteen per cent partial disability; that the wages of the injured employe were $89.60 weekly; that when he returned to work his earning power was $50; and that his loss of earning power was $39.60 weekly, were all supported by competent evidence and are binding on this Court.

We have held that the testimony of a physician as to the estimate of a claimant's anatomical disability is not the only factor that the fact-finder must take into consideration in determining partial disability. *Cunningham v. Guerrina,* 188 Pa. Superior Ct. 288, 146 A. 2d 318 (1958). Here we said, at page 291, "Such factors as the appellee's mental outlook, his industrial background, his age, his education, the occupation, if any, he could perform where his particular physical impairment would not be a total bar, and whether such work exists, are to be considered."

From this discussion it is clear that the percentage of disability from a medical standpoint is used only as a guide to determine, with other factors, whether or not the claimant is totally or partially disabled. Once this is determined, as here, that he is partially disabled, as a matter of fact, the computation of his loss of earning power, if any, as required by the Act, is in issue.

As we said in *Ede v. Ruhe Motor Corporation,* 184 Pa. Superior Ct. 603, 136 A. 2d 151 (1957), at page 609, "The proper test to be applied in determining

whether the power to earn has been diminished is the claimant's ability to earn wages in any kind of employment for which he is fitted: Garvin v. Philadelphia Transportation Co., 173 Pa. Superior Ct. 15, 94 A. 2d 72." And further, in the same case, at page 607, "There is a distinction between wages and earning power. Where there is disability and loss of earning power, but the employe receives as much in wages for his services as he did before the injury, an award may be made but the payment of compensation must be suspended: Scipani v. Pressed Steel Car Co., 150 Pa. Superior Ct. 410, 28 A. 2d 502. And see the well considered opinion by Judge (now Mr. Justice) ARNOLD in Holtz v. McGraw & Bindley, 161 Pa. Superior Ct. 371, 54 A. 2d 905. Section 306 (b) of the statute, as amended, refers to the actual amount of wages received, regardless of the rate of pay and the lack of opportunity for employment: Liberatori v. Scott Smith Cadillac Co., 172 Pa. Superior Ct. 121, 92 A. 2d 557."

And as anatomical disability is not the only factor to be taken into consideration in determining partial disability so also, the amount of wages is only one factor to be taken into consideration in determining the earning power of the claimant. "Elements affecting earning power in addition to actual wages received after injuries are: (1) the character and extent of the physical injury or disability; (2) his productivity or efficiency in the same employment as compared to what it was immediately prior to the injury; and (3) his ability to earn wages in any kind of employment for which he is fitted." Leaver v. The Midvale Co., 162 Pa. Superior Ct. 393, 400, 57 A. 2d 698 (1948). See also: Bausch v. Fidler, 277 Pa. 573, 121 A. 507 (1923). So that, as the claimant contends, it is conceivable that a claimant could be but one per cent disabled and from the standpoint of earning power be totally disabled and he could have a ninety-nine per cent disability and only have a partial loss of earning power.

And as the court below points out, "The record in this case shows that medical testimony was offered as to the loss of earning power of the claimant and also that there was evidence offered to show the earnings of the claimant after the injury, claimant's description of his own physical condition, the type of work claimant is fitted to perform and the fact that he was given employment by a relative who shows him special favors in permitting him to take time off from work whenever he feels tired or unable to proceed. We have no doubt that the Board took all of these matters into consideration and are, therefore, of the opinion that there was sufficient competent testimony upon which the Board could rest its finding that the claimant's loss of earning power was $39.60 per week."

In this case, however, the fact-finders taking all factors into consideration, have determined the claimant's partial disability to be fifteen per cent, which coincides with the medical testimony of partial disability of ten to fifteen per cent, and in the case of earning power they have taken all factors into consideration and find that his earning power coincides with his actual wages of $50, so that his loss of earning power becomes $39.60 per week.

The Act says clearly and simply: "sixty-six and two-thirds per centum of the difference between the wages of the injured employe, . . . and the earning power of the employe thereafter; but such compensation shall not be more than twenty-three dollars per week. . . . The term 'earning power', as used in this section, shall in no case be less than the weekly amount which the employe receives after the accident. . . ."

This Court has interpreted the portion of the Act dealing with "earning power" in the case of *Scipani v. Pressed Steel Car Co.*, supra, at page 415, "The 1939 amendment refers to the actual amount of wages received regardless of the rate of pay and the lack of op-

204

portunity for employment." This was followed in *Liberatori v. Scott Smith Cadillac Co.*, supra, at page 124, where we said, "The Scipani case is the settled law of the Commonwealth. It has acquired the virtual force of a legislative enactment. When the 1945 and 1949 legislatures amended §306(b) without touching the foundation of the Scipani case they, in effect, re-enacted the quoted clause and the interpretation placed upon it by this Court. Statutory Construction Act of May 28, 1937, P. L. 1019, §§52(4), 73, 46 PS §§552, 573 . . . As Judge MILNER of the court below said: 'The question whether another rule or formula would achieve a fairer or more just result than the one prescribed under section 306 (b) of the 1939 amendment is a matter for the legislature to determine and is not within the province of this court.' "

Judgment affirmed.